UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-CR-80124-RAR-2

**UNITED STATES OF AMERICA**,

    Plaintiff,

v.

**MARK AGRESTI**,

    Defendant.
_____/

## ORDER DENYING MOTION FOR JUDGMENT OF ACQUITTAL

Following the return of a guilty verdict on February 10, 2022 [ECF No. 399], Defendant Mark Agresti filed a Motion for Judgment of Acquittal [ECF No. 437] ("Motion"). The Court has carefully reviewed the Motion, the Government's Response in Opposition [ECF No. 475],[1] the Defendant's Reply [ECF No. 506], the record, and applicable law. As explained herein, it is hereby

**ORDERED AND ADJUDGED** that the Motion for Judgment of Acquittal [ECF No. 437] is **DENIED**.

## BACKGROUND

On June 22, 2018, the Grand Jury returned an indictment against Defendant, along with co-defendants Ken Bailynson, Stephanie Curran, and Matthew Noel. *See generally* Indictment [ECF No. 3]. Defendant was charged with conspiracy to commit health care and wire fraud, in violation of 18 U.S.C. section 1349 (Count 1); and eleven substantive counts of health care fraud, in violation of 18 U.S.C. section 1347 (Counts 2-12). *Id.* On February 10, 2022, after an eleven-day trial, [ECF No. 357], the jury convicted Defendant of all twelve counts. [ECF No. 399].

---

[1] The Government's Response addresses Defendant's Motion for Judgment of Acquittal as well as Defendant's Motion for New Trial, [ECF No. 438]. The Court will address the latter by separate Order.

Page **1** of **7**

In his Motion, Defendant argues that (1) he is entitled to acquittal as a matter of law, on all counts (or, alternatively, as to all health care fraud counts), because the Government failed to allege or establish at trial that urine drug testing ("urinalysis") is a health care "service" pursuant to Title 18, United States Code, section 1347, Mot. at 3-4; (2) the Government's health care fraud theory was defective because Defendant diagnosed his patients as addicts for whom *some* urinalysis was proper, *id*. at 8-10; and (3) the Government's evidence was insufficient to establish conspiracy to commit health care fraud, because Defendant did not make material misstatements on, or personally submit, the claims to insurers. *Id*. at 17.

Defendant's arguments are overwhelmingly based on unfounded notions that urinalysis is not a medical service, medical necessity is impossible to determine in behavioral health fields, and a doctor must personally submit the claim to an insurer to be convicted of health care fraud or conspiracy to commit health care fraud. Not only do these assertions lack any basis in law, but they are also directly contradicted by the evidence presented at trial and the Eleventh Circuit's holding in *United States v. Abovyan*, where the court upheld a conviction of a doctor who regularly ordered medically unnecessary urinalysis tests. 988 F.3d 1288, 1304 (11th Cir. 2021). The Court addresses the arguments raised in Defendant's Motion below.

## **ANALYSIS**

In considering a request for judgment of acquittal under Federal Rule of Criminal Procedure 29(c), "a district court should apply the same standard used in reviewing the sufficiency of the evidence to sustain a conviction." *United States v. Ward*, 197 F.3d 1076, 1079 (11th Cir. 1999) (citation omitted). This means a "verdict of guilty must stand if there is substantial evidence to support it." *United States v. Toler*, 144 F.3d 1423, 1428 (11th Cir. 1998) (citation omitted). Any conflicts in the evidence are resolved in favor of the Government, and all inferences that tend

to support the Government's case must be accepted. *See Ward*, 197 F.3d at 1079. The Court is thus tasked with determining "whether a reasonable jury could have found the defendant guilty beyond a reasonable doubt." *Id.* (citations omitted); *see also United States v. Medina*, 485 F.3d 1291, 1296–97 (11th Cir. 2007). Because the jury is "free to choose between or among the reasonable conclusions to be drawn from the evidence," the Court must accept all of the jury's reasonable inferences and credibility determinations. *United States v. Garcia*, 447 F.3d 1327, 1334 (11 Cir. 2006) (quoting *United States v. Sellers*, 871 F.2d 1019, 1021 (11th Cir.1989)). These standards apply whether the evidence being reviewed is direct or circumstantial. *See, e.g., United States v. Reeves*, 742 F.3d 487, 497 (11th Cir. 2014) (citations omitted).

### I. The Urinalysis Tests Ordered by Defendant Were Medical Services

Defendant claims—without citation to any relevant authority—that the urinalysis tests he (a medical doctor) ordered to supposedly treat his patients are not "medical services" and instead were "behavioral" services—thereby taking them outside the purview of the health care fraud statute. Mot. at 3-4. Not so. Section 1347(a) provides a criminal penalty for anyone who: "knowingly and willfully executes, or attempts to execute, a scheme or artifice (1) to defraud any health care benefit program; or (2) to obtain, by means of false or fraudulent pretenses, representations, or promises, any of the money or property owned by, or under the custody or control of, any health care benefit program, in connection with the delivery of or payment for health care benefits, items or services." 18 U.S.C. § 1347.

At trial, witnesses for two insurance companies confirmed that urinalysis testing was a service for which health insurance companies would provide coverage, so long as the testing was actually provided and deemed medically necessary by a doctor. *See* Tr. of Jury Trial (Volume 1) [ECF No. 375] 65:9-22; 134:9-21. Further, the jury heard testimony about the Defendant's

knowledge of this medical necessity requirement, including cooperator testimony,[2] emails from co-conspirators asking for documents to send insurers in support of the medical necessity of the testing,[3] and letters from the Defendant to insurers describing the purported medical necessity of urinalysis testing.[4] Finally, the jury was instructed in accordance with the Eleventh Circuit Pattern Jury Instructions that a "'health-care benefit program' means any public or private plan or contract, affecting commerce, under which any medical benefit, item, or service is provided to any individual, and includes any individual or entity that is providing a medical benefit, item, or service for which payment may be made under the plan or contract." Jury Instructions [ECF No. 395] at 17. After hearing these instructions, the jury ultimately found that Defendant's ordering of these tests as part of the medical treatment he provided to his patients violated the health care fraud statue.

The testimony and the Jury Instructions directly rebut Defendant's claim that the Government "never argued or introduced evidence that urine testing for residency at a sober home constitutes a health care service[,]" as well as his claim that "the jury [was never] instructed on the term 'health care' service." Mot. at 4. More importantly, it highlights the absurdity of Defendant's attempt to argue that tests provided in the course of *medical* treatment, ordered by a *medical* doctor, and certified as *medically* necessary by that doctor, do not constitute *medical* services. Thus, the Court finds this argument without merit.

### II. The Evidence is Sufficient to Sustain a Guilty Verdict on the Health Care Fraud Counts (Counts 2 to 12)

Defendant claims that some urinalysis testing would have been appropriate given the undisputed fact that the patients were addicts—thereby precluding the Government from proving

---

[2] Tr. of Jury Trial (Volume 8) [ECF No. 402] 59-60.
[3] Trial Ex. 71-1 *et seq.* [ECF No. 430].
[4] Trial Ex. 77 [ECF No. 430].

the elements of health care fraud. Mot. at 8-10. The claim that *some* tests were medically necessary has no bearing on whether there was sufficient evidence for the jury to find that the ordering of the *charged* tests violated the health care fraud statute.

The Government's evidence at trial with respect to each fraudulent urinalysis test charged in the Indictment and included in Counts 2-12 was overwhelming and included: (1) the insurance billing with respect to the particular test; (2) the patient file belonging to the patient tested—including the charged test result and all other urinalysis test results; and (3) in some cases, testimony from the individual patient to whom the charged test was given. *See* Trial Exs. 13-32 [ECF No. 430]. Thus, a juror reviewing that evidence, together with the Government's expert testimony,[5] could have reasonably concluded that the charged tests were not medically necessary because, according to electronic records and direct testimony, it was either not reviewed by the Defendant and his staff at all or was reviewed so long after administration as to be rendered useless. *See* Tr. of Jury Trial (Volume 4) [ECF No. 402] 191-192.

Simply put, the fact that *some* tests may have been medically necessary does not prove the insufficiency of evidence related to the *charged* tests.

### III. The Evidence is Sufficient to Sustain a Guilty Verdict on the Conspiracy Count

Finally, Defendant claims that "[t]he Government has not shown that Dr. Agresti misrepresented any facts in submitting the claims[,]" and therefore there was insufficient evidence to establish a conspiracy to commit health care fraud. Mot. at 17. This argument has no basis in fact or law and ignores the overwhelming evidence of a textbook health care fraud conspiracy presented at trial.

---

[5] Tr. of Jury Trial (Volume 5) [ECF No. 379] 214-236; Tr. of Jury Trial (Volume 6) [ECF No. 383] 6-152.

It is well established that to sustain a conspiracy conviction under 18 U.S.C. section 1349, the Government must prove that (1) a conspiracy existed; (2) the defendant knew of it; and (3) the defendant knowingly and voluntarily joined it. *United States v. Vernon*, 723 F.3d 1234, 1273 (11th Cir. 2013). Because the crime of conspiracy is based on intent and is "predominantly mental in composition," the Government may prove these elements by circumstantial evidence. *Id*.; *United States v. Mateos*, 623 F.3d 1350, 1362 (11th Cir. 2010) (affirming Medicare fraud convictions based on circumstantial evidence of knowledge). Thus, courts have held that the nature of conspiracy requires proof by such inferences and circumstantial evidence. *See Vernon*, 723 F.3d at 1273; *Mateos*, 623 F.3d at 1362. In addition, "a defendant can be convicted of conspiracy if the evidence demonstrates that he was aware of the conspiracy's essential nature, even if he did not know all of its details, played only a minor role in the overall scheme, did not have direct contact with other alleged co-conspirators, or did not participate in every stage of the conspiracy." *United States v. Sosa*, 777 F.3d 1279, 1290 (11th Cir. 2015).

The evidence presented at trial was sufficient to establish that Defendant not only was aware of the conspiracy's essential nature but also that he knew the details, played a large role in the overall scheme, and had direct contact with the other alleged co-conspirators. In fact, the Government presented substantial evidence of contact between Defendant and his co-conspirators that would allow a reasonable juror to find that a conspiracy to commit health care fraud existed. Trial Ex. 71-1 *et seq*. [ECF No. 430].

As previously mentioned, *Abovyan* is instructive and squarely on point in rebutting Defendant's claim regarding the insufficiency of evidence related to his conspiracy conviction. The defendant in *Abovyan* was a medical director convicted of conspiracy to commit health care fraud based upon his ordering of fraudulent urinalysis testing in addiction treatment. 988 F.3d at

1293-4.  In that case, as here, the defendant did not always bill the services himself.  *Id*. at 1303.  The Eleventh Circuit noted that while the evidence against the defendant in *Abovyan* was "largely circumstantial," it was sufficient to convict the defendant, because the Government proved to the jury that, among other things, the defendant created "standing orders so that the Facilities could order expensive and medically unnecessary lab urine tests three times per week per patient"; and "pre-signed requisition forms so that the Facilities could order even more unnecessary testing from other labs."  *Id*.  In addition, the defendant in *Abovyan* "reviewed and signed off on certain lab test results without discussing them with the patients," and "admitted the Facilities would 'test for everything,' even non-addictive drugs not ordinarily tested in addiction treatment."  *Id*.

The similarities between the facts in *Abovyan* and the facts here are obvious.  Defendant engaged in many of the same acts as the defendant in *Abovyan*, in addition to the fact that the Government presented direct, as opposed to merely circumstantial, evidence of a conspiracy throughout the trial.  Accordingly, the Court finds that there was sufficient evidence to sustain a guilty verdict on the conspiracy count.

## CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** that Defendant's Motion for Judgment of Acquittal [ECF No. 437] is **DENIED**.

**DONE AND ORDERED** in Ft. Lauderdale, Florida this 24th day of May, 2022.

*/s/ Rodolfo A. Ruiz II*
**RODOLFO A. RUIZ II**
**UNITED STATES DISTRICT JUDGE**

cc:   counsel of record