UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-CR-80124-RAR-2

UNITED STATES OF AMERICA

v.

**MARK AGRESTI**,

    Defendant.
_____/

## ORDER DENYING MOTION FOR NEW TRIAL

Following the return of a guilty verdict on February 10, 2022 [ECF No. 399], Defendant Mark Agresti filed a Motion for New Trial [ECF No. 438] ("Motion"). The Court has carefully reviewed the Motion, the Government's Response in Opposition [ECF No. 475], Defendant's Reply [ECF No. 507], the record, and applicable law.[1] As explained herein, it is hereby

**ORDERED AND ADJUDGED** that the Motion for New Trial [ECF No. 438] is **DENIED**.

## BACKGROUND

On June 22, 2018, the Grand Jury returned an indictment against Defendant, along with co-defendants Ken Bailynson, Stephanie Curran, and Matthew Noel. *See generally* Indictment [ECF No. 3]. Defendant was charged with conspiracy to commit health care and wire fraud, in

---

[1] The Court notes that after Defendant filed his Reply in Support of His Motion for a New Trial, the Government filed a Motion for Hearing on Defendant's Motion for a New Trial, [ECF No. 528], claiming that "Defendant's motion and reply contain significant factual misstatements and omissions regarding the Defendant's prior counsel[.]" Mot. for Hearing at 1. Subsequently, Defendant filed a Notice of Supplement/Correction to Motion for New Trial clarifying representations made regarding Defendant's prior counsel. [ECF No. 529]. The Court is intimately familiar with the facts surrounding this issue both through the briefing on the instant Motion and hearing argument on, and ultimately denying, Defendant's Second Motion to Dismiss Indictment or in the Alternative Motion to Exclude Testimony of Paul Materia, [ECF No. 345]. Accordingly, no hearing to correct factual discrepancies is required and the Government's Motion, [ECF No. 528] is **DENIED**.

violation of 18 U.S.C. section 1349 (Count 1); and eleven substantive counts of health care fraud, in violation of 18 U.S.C. section 1347 (Counts 2-12). *Id.* On February 10, 2022, after an eleven-day trial, [ECF No. 357], the jury convicted Defendant on all twelve counts. [ECF No. 399].

In his Motion, Defendant argues that (1) his Fifth and Sixth Amendment rights were violated because the attorney representing cooperator Paul Materia previously represented the Defendant; (2) the Government relied on a "defective fraud theory" in failing to prove material misstatements made to insurance companies by the Defendant; (3) the jury was improperly instructed on deliberate ignorance; (4) the jury should have received a special verdict form indicating whether they had found the Defendant guilty of conspiracy to commit health care fraud, wire fraud, or both; (5) the Government engaged in improper vouching and use of Rule 404(b) evidence in closing; and (6) the Government constructively amended the Indictment to charge the Defendant with fraud at other addiction facilities not mentioned in the Indictment.

## **ANALYSIS**

Under Federal Rule of Criminal Procedure 33, a court may grant a new trial "if the interest of justice so requires." Fed. R. Crim. P. 33(a). The power of a court to grant a new trial under Rule 33 is much broader than the power to grant a motion for acquittal under Rule 29. *See United States v. Ward*, 274 F.3d 1320, 1323 (11th Cir. 2001). The decision to grant or deny a criminal defendant's motion for new trial rests with the district court's sound discretion. *See United States v. Rafferty*, 296 F. App'x 788, 797 (11th Cir. 2008). The trial court is not free, however, to "reweigh the evidence or set aside the verdict simply because it feels some other result would be reasonable." *Butcher v. United States*, 368 F.3d 1290, 1297 (11th Cir. 2004) (citation omitted). "The evidence must preponderate heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand." *Id.* (citation omitted). This ensures that the district court's judgment is not substituted for that of the jury. *Id.* Indeed, "[c]ourts are to grant [new trials]

sparingly and with caution, doing so only in those really 'exceptional cases.'" *United States v. Martinez*, 763 F.2d 1297, 1313 (citations omitted).

### I. A New Trial is Not Warranted Because Defendant's Lawyer Represented a Government Cooperator in a Related Matter

Defendant claims that "[a] new trial should be granted . . . because attorney Robert Nicholson's representation of Government witness Paul Materia violated [his] Fifth and Sixth Amendment rights." Mot. at 1. A virtually identical argument was rejected by this Court in pretrial proceedings, *see* [ECF No. 355], and this renewed version fares no better. Defendant attempts to amalgamate the Fifth and Sixth Amendments, constitutional prohibitions on prosecutorial misconduct, and state bar attorney ethics regulations into a claim that the proceeding was infected with insurmountable bias entitling him to a new trial. Defendant's arguments are without merit.

In the first paragraph of his Motion, Defendant states in a conclusory fashion that "Robert Nicholson's representation of Government witness Paul Materia violated [his] Fifth . . . Amendment rights." Mot. at 1. But the Motion lacks any authority, or even argument, as to how the Fifth Amendment factors into Defendant's Sixth Amendment right to conflict free representation or the alleged prosecutorial misconduct. Accordingly, the Court finds no violation of Defendant's Fifth Amendment rights.

Defendant is correct that the Sixth Amendment guarantees "a correlative right to representation that is free from conflicts of interest." *Wood v. Georgia,* 450 U.S. 251, 271 (1981). However, he fails to provide the Court with any explanation as to how attorney Nicholson's representation of Defendant impeded that right. Attorney Nicholson represented Defendant in *one* interview *six years* before his trial and then, at his arraignment. Mot. at 2 (emphasis added). Defendant terminated Attorney Nicholson shortly after his arraignment. *Id*. Concurrently, Attorney Nicholson represented a co-defendant in the case, who ultimately cooperated with the Government and testified as a key witness for the prosecution in Defendant's case. *Id.*

While Defendant claims that there is "no reported case in which such a gross violation of role of counsel went without any remedy", Mot. at 4, Sixth Amendment jurisprudence is rife with examples of virtually identical, and constitutionally permissible, dual representation scenarios. *See, e.g., United States v. Mounier*, 307 F. App'x 379 (11th Cir. 2009) (denying a Sixth Amendment challenge where "an attorney represented defendant in state court and his codefendant in federal court, and who continued to represent codefendant, even though defendant did not waive conflict of interest."); *see also United States v. Williams*, 95 F. App'x 540 (5th Cir. 2004) ("Defendant's former attorney did not violate duty of loyalty to defendant by testifying against him . . . ."). Further, Defendant is presently, and has been for the past four years, represented by conflict free counsel. Mot. at 4. Similarly, the Government's witness was represented by competent counsel who gave him conflict free advice to plead guilty in his case and to cooperate with the Government. Neither Defendant nor the Government's witness can establish that their counsel is conflicted. In sum, Defendant's Sixth Amendment right to counsel was not violated.

Defendant's arguments related to prosecutorial misconduct are similarly unavailing. Prosecutorial misconduct is established through a two-part test: (1) the questionable conduct must be improper, and (2) the questionable conduct must prejudicially affect the substantial rights of the defendant. *United States v. Gonzalez*, 122 F.3d 1383, 1389 (11th Cir. 1997). Here, neither prong is met. Defendant cites no authority in support of the notion that a defense attorney's failure to obtain a conflict waiver, or disqualify himself, amounts to misconduct on the part of the Government—much less misconduct warranting dismissal of an indictment, the exclusion of testimony, or a new trial. Further, as the Court noted during its prior hearing on this argument, there is no evidence that information obtained by Defendant's former attorney during the course of representation "ultimately found its way into the hands of the Government." Tr. of Jan. 20,

2022 Hearing at 29. Accordingly, Defendant's prior attorney-client relationship is not grounds for a new trial.

## II. The Government's Fraud Theory Was Sufficient to Maintain a Guilty Verdict

As he did in his Motion for Judgment of Acquittal, Defendant again argues that the Government's theory of fraud was "defective" because: (1) Defendant properly diagnosed his patients as addicts and thus, he did not make material misstatements to insurance companies, and (2) there were no established standards governing the frequency of confirmatory UA testing. Mot. at 10. This argument was directly addressed and rebutted in the Court's Order Denying Defendant's Motion for Judgment of Acquittal, [ECF No. 534]. As the Court explained:

> Defendant's arguments are overwhelmingly based on unfounded notions that urinalysis is not a medical service, medical necessity is impossible to determine in behavioral health fields, and a doctor must personally submit the claim to an insurer to be convicted of health care fraud or conspiracy to commit health care fraud. Not only do these assertions lack any basis in law, but they are also directly contradicted by the evidence presented at trial and the Eleventh Circuit's holding in *United States v. Abovyan*, where the court upheld a conviction of a doctor who regularly ordered medically unnecessary urinalysis tests. 988 F.3d 1288, 1304 (11th Cir. 2021).

[ECF No. 534] at 2. The Government's evidence that Defendant's actions constituted health care fraud was overwhelming and included: (1) the insurance billing with respect to the particular test; (2) the patient file belonging to the patient tested—including the charged test result and all other urinalysis test results; and (3) in some cases, testimony from the individual patient to whom the charged test was given. *See* Trial Exs. 13-32 [ECF No. 430]. Simply put, Defendant's assertion that he is entitled to a new trial because the Government's fraud theory was defective is meritless.

## III. The Jury Was Instructed Properly

Defendant argues that there was no evidence of deliberate ignorance in this case, and the Court erred in giving that instruction. Mot. at 11. As a preliminary matter, Defendant failed to

object to the deliberate ignorance instruction at trial. Notwithstanding Defendant's failure to object, the trial record clearly establishes extensive evidence of deliberate ignorance on the part of Defendant. The Eleventh Circuit has made clear that the deliberate ignorance instruction "should not be given in every case in which a defendant claims a lack of knowledge, but only in those comparatively rare cases where there are facts that point in the direction of deliberate ignorance." *United States v. Rivera*, 944 F.2d 1563, 1571 (11th Cir. 1991). The case of *United States v. Ugha* is particularly instructive in this regard. 789 F. App'x 758 (11th Cir. 2019). There, the Court held, in pertinent part, as follows:

> A deliberate ignorance instruction is appropriate when the facts support the inference that the defendant was aware of a high probability of the existence of the fact in question and purposely contrived to avoid learning all of the facts in order to have a defense in the event of a subsequent prosecution. *United States v. Garcia-Bercovich*, 582 F.3d 1234, 1237 (11th Cir. 2009). The standard is the same whether the evidence is direct or circumstantial. *United States v. Arias*, 984 F.2d 1139, 1143 (11th Cir. 1993). A district court should not give a deliberate ignorance instruction when there is relevant evidence of only actual knowledge, rather than deliberate avoidance. *United States v. Steed*, 548 F.3d 961, 977 (11th Cir. 2008). In cautioning against overuse of the deliberate ignorance instruction, we've noted the danger that juries will convict on a basis akin to a negligence standard — that the defendant should have known that the conduct was illegal. *United States v. Rivera*, 944 F.2d 1563, 1570 (11th Cir. 1991).

*Ugha*, 789 F. App'x at 760. Here, Defendant himself testified that he did not realize his co-defendant was testing patients so frequently, and further, he believed his co-conspirator was complying with his order, Trial Ex. 54 [ECF No. 430], to reduce the frequency of testing over time. This testimony directly conflicted with the testimony of Ken Bailynson. Bailynson specifically testified that Defendant told him that the step-down order was simply to cover himself in the event that he was ever caught. Further, Defendant testified that he was so bad at using electronic medical records that he did not understand how to log into the clinic's electronic data system to review results, even though he had access to the system and had been repeatedly asked to review lab

results. This testimony lays out specific facts that point in the direction of deliberate ignorance—Defendant put in place deliberate protocols to "cover his tracks" and make it appear that Defendant was prescribing less testing than was actually being done.

### IV. The Remedy for a Lack of Special Verdict Form, If Any, is Not a New Trial

Defendant claims that because "[t]he jury was asked to resolve the multi-object conspiracy charge in Count I of the Indictment by finding unanimously either a wire fraud conspiracy or a health care fraud conspiracy or both[,]" he is entitled to a new trial. Mot. at 12. Not so. The Defendant's reliance on *United States v. Grow*, 977 F.3d 1310, 1330 (11th Cir. 2020) is misplaced. In *Grow*, which also alleged a multi-object conspiracy to commit health care and wire fraud, the Eleventh Circuit held that, absent a special verdict form, the district court could not sentence the Defendant (on the conspiracy count) to the twenty-year statutory maximum penalty for conspiracy to commit wire fraud but was limited to the ten-year statutory maximum applicable to conspiracy to commit health care fraud. The *Grow* Court, however, gave the Government the choice as to whether to retry the defendant on the conspiracy count, with a special verdict form, or to resentence the defendant subject to the ten-year, rather than twenty-year, statutory maximum. *Id*. Therefore, the remedy for lack of a special verdict form, if any, would not be a new trial. Accordingly, Defendant's argument regarding the lack of a special verdict form fails.

### V. The Testimony of Dr. Jarvis Was Proper and Does Not Warrant a New Trial

Defendant takes issue with Dr. Jarvis's testimony that (1) some alcohol or drug abuse is visible to the naked eye without the need for testing; (2) the Defendant's testing regimen was not helpful to patient care; (3) urinalysis tests were being billed at an extraordinarily high rate, or for a lot of money; and (4) other patients were subject to the same testing regimen as the 11 patient files she reviewed. Mot. at 12-13. However, Defendant does not explain what is improper about this testimony or why it would entitle him to a new trial. In addressing Defendant's Motion to

Exclude, the Court ruled that Dr. Jarvis's testimony was proper under Fed. R. Evid. 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 591 (1993).

To the extent that Dr. Jarvis's testimony was outside her area of formal expertise, Rule 701 of the Federal Rules of Evidence permits opinion testimony by lay witnesses. To qualify, a witness's opinion is limited to opinions that are "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. Lay opinion testimony must be based on "firsthand knowledge or observation" and "helpful in resolving issues." *United States v. Jayyousi,* 657 F.3d 1085, 1102 (11th Cir. 2011). Ultimately, under either scenario—whether Dr. Jarvis's statements qualify as expert testimony or as lay opinions—a new trial on this basis is not warranted.

### VI.  *No Conduct by the Government Warrants a New Trial*

Defendant claims that the Government's closing argument was improper due to (1) overly prejudicial statements; (2) misuse of 404(b) evidence; and (3) statements that Defendant believed constructively amended the indictment. Mot. at 14–16. As explained below, these arguments have no factual or legal basis and, more importantly, do not warrant a new trial.

#### A.  **Supposedly Prejudicial Statements**

Defendant argues that the Government improperly suggested to the jury that the Defendant had lost his presumption of innocence by testifying. Plainly, Defendant (who did not object to any of the Government's closing argument) is incorrect both in his representation of the facts, and as a matter of law. The Government did not call the Defendant a liar during closing argument nor otherwise improperly inject its opinion into closing argument. The Government did, however, refer repeatedly to testimony that Defendant gave and explained how it conflicted with other testimony and the facts surrounding his interviews with the FBI. *See* Trial Tr. (Volume 11) at

1998-2000.  Such references are squarely permissible under the law of this Circuit.  *See United States v. Rivera*, 780 F.3d 1084, 1100-01 (11th Cir. 2015) (citation omitted) ("[A] prosecutor is free to suggest during oral argument what the jury should conclude from the evidence before it."). It is clear from the record that the Government's closing simply referred the jury to the evidence in the case, and then juxtaposed that evidence with the Defendant's inconsistent statements to both the FBI earlier in the investigation, and on the witness stand at trial.  *Id*.  Thus, the Government's statement at closing did not violate Defendant's presumption of innocence.

### B.  404(b) Evidence

Defendant claims that two statements made by the Government constitute an expansive and overly prejudicial use of Rule 404(b) evidence—by engaging in "improper vouching."  Mot. at 14.  Once again, this argument is baseless.  The first statement Defendant takes issue with is: "In order to be medically necessary, [the drug tests] have to be [reviewed] by a medical person, not an 18-year-old with no medical training, a doctor, or his staff.  Every doctor in the world knows that." [ECF No. 407] at 42.  This statement conveys common sense—medical professionals should be reviewing the results of medical tests—and was related to testimony from both Bailynson and Defendant, which made clear that non-medical staff at the clinic were reviewing the drug tests. The second statement that Defendant takes issue with is when the Government stated, "What Mr. Materia told you, particularly Mr. Materia, is, 'It was known in the community that he would do this, and we needed someone to do it.'"  *Id*. at 127.  This statement related to Mr. Materia falls squarely within the bounds of Rule 404(b).  *See* Fed. R. Evid. 404(b)(2) ("This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.").  Similarly, the statement related to medical necessity related back to earlier testimony by the Defendant, Bailynson, and other co-defendants.  Thus, the Court finds that nothing in these statements runs afoul of Rule 404(b).

### C. *Constructive Amendment to the Indictment*

Finally, Defendant argues that the Government improperly used Rule 404(b) evidence, and, in so doing, constructively amended the Indictment, by referring to the fact that Defendant had been acting as medical director for addiction facilities "all over town." Again, Defendant is patently wrong. The Government referred to admitted evidence, namely a chart of Defendant's work at other addiction facilities, Trial Ex. 89 [ECF No. 430], almost all of which billed insurance for urinalysis testing. The Government referred to this evidence at the beginning of closing in describing Defendant's motive to work as medical director. Therefore, once again, nothing in these statements runs afoul of Rule 404(b).

### CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** that Defendant's Motion for New Trial [ECF No. 438] is **DENIED**.

**DONE AND ORDERED** in Ft. Lauderdale, Florida this 26th day of May, 2022.

*/s/ Rodolfo A. Ruiz II*
**RODOLFO A. RUIZ II**
**UNITED STATES DISTRICT JUDGE**

cc:   counsel of record