UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-CR-80124-RAR

UNITED STATES OF AMERICA

v.

**MARK AGRESTI**,

Defendant.
_____/

## ORDER DENYING DEFENDANT'S MOTION FOR BOND PENDING APPEAL

**THIS CAUSE** comes before the Court upon Defendant's Motion for Bond Pending Appeal [ECF No. 561] ("Motion"), filed on June 28, 2022.[1]  The Court having reviewed the written submissions, the applicable law, and the record, and being otherwise fully advised, it is hereby

**ORDERED AND ADJUDGED** that Defendant's Motion [ECF No. 561] is **DENIED** for the reasons set forth herein.

## BACKGROUND

On February 10, 2022, Defendant was found guilty after trial by jury of one count of conspiracy to commit health care fraud in violation of 18 U.S.C. § 1349 and eleven counts of health care fraud in violation of 18 U.S.C. § 1347.  *See* Jury Verdict [ECF No. 399].  On May 27, 2022, the Court sentenced Defendant to a term of 100 months of imprisonment as to each count, all to run concurrently, and a three-year period of supervised release, and Defendant was remanded to the custody of the U.S. Marshal.  *See* Amended Judgment [ECF No. 559].  An Amended Judgment

---

[1] The Motion is fully briefed and ripe for adjudication.  *See* Government's Resp. to Def.'s Mot. for Bond Pending Appeal ("Response") [ECF No. 565]; Def.'s Reply to Government's Resp. to Mot. for Bond Pending Appeal ("Reply") [ECF No. 566].

was entered on June 24, 2022, following a restitution hearing after which Defendant was ordered to pay restitution in the amount of $31,041,938.68.  *See id.*

Defendant filed a Notice of Appeal on June 14, 2022.  [ECF No. 549].  On June 28, 2022, Defendant filed the instant Motion seeking release from custody on bond pending appeal.

## LEGAL STANDARD

Title 18 U.S.C. § 3143(b) provides for release on bond pending appeal if the Court finds "(A) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released . . . ; and (B) that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in (i) reversal, (ii) an order for a new trial, (iii) a sentence that does not include a term of imprisonment, or (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process."  The Eleventh Circuit has clarified this analysis by adopting four factors:

> (1) that the defendant is not likely to flee or pose a danger to the safety of another person or the community if released;
> (2) that the appeal is not for the purpose of delay;
> (3) that the appeal raises a substantial question of law or fact; and
> (4) that if the substantial question is determined favorably to the defendant on appeal, that decision is likely to result in reversal or an order for a new trial of all counts on which imprisonment has been imposed.

*United States v. Giancola*, 754 F.2d 898, 901 (11th Cir. 1985), following *United States v. Miller*, 753 F.2d 19 (3d Cir. 1985).  The burden of establishing these factors is on Defendant.  *Id.*  In the context of 18 U.S.C. § 3143(b), the Eleventh Circuit defines a "substantial question" as "one of more substance than would be necessary to a finding that it was not frivolous.  It is a 'close' question or one that very well could be decided the other way."  *Id.*

## ANALYSIS

Defendant argues that the Supreme Court's recent decision in *Ruan v. United States*, 142 S. Ct. 2370 (2022), creates a substantial question of law or fact as to the government's theory of prosecution in this case. Mot. ¶¶ 2–4. In *Ruan*, the defendants were medical doctors convicted under section 841 of the Controlled Substances Act for dispensing controlled substances other than "as authorized" under the statute. *Ruan*, 142 S. Ct. at 2375. Section 841 makes it a federal crime, "except as authorized, for any person knowingly or intentionally to manufacture, distribute, or dispense a controlled substance," such as opioids. *Id.* at 2374–75 (quoting 21 U.S.C. § 841(a)) (cleaned up). Under applicable regulations, a prescription is "authorized" when a licensed physician issues it "for a legitimate medical purpose acting in the usual course of his professional practice." *Id.* at 2375 (quoting 21 C.F.R. § 1306.04(a)) (alteration omitted).

The *Ruan* Court considered whether section 841's "'knowingly or intentionally' *mens rea* applies to the 'except as authorized' clause" of the regulations and held, ultimately, that it does. 142 S. Ct. at 2382. Accordingly, once "a defendant produces evidence that he or she was authorized to dispense controlled substances, the [g]overnment must prove beyond a reasonable doubt that the defendant knew that he or she was acting in an unauthorized manner"—*i.e.*, not "for a legitimate medical purpose acting in the usual course of his professional practice"—"or intended to do so." *Id.* (alteration omitted). The Court based this conclusion on the "longstanding presumption, traceable to the common law, that Congress intends to require a defendant to possess a culpable mental state." *Id.* at 2377 (citing *Rehaif v. United States*, 139 S. Ct. 2191, 2195 (2019)). The Court reasoned that "[s]ection 841 contains a general scienter provision—'knowingly or intentionally.'" *Id.* "And in § 841 prosecutions, a lack of authorization is often what separates wrongfulness from innocence"—particularly with respect to "doctors dispensing drugs via

prescription". *Id.* Thus, the scienter requirement must reach a defendant's having acted outside the bounds of his authorization. *Id.* at 2379.

The Court rejected the government's substitute *mens rea*—"objectively reasonable good-faith effort"—because that "standard would turn a defendant's criminal liability on the mental state of a hypothetical 'reasonable' doctor, not on the mental state of the defendant himself or herself." *Ruan*, 142 S. Ct. at 2381. Importantly, the Court noted, "[t]he Government . . . can prove knowledge of a lack of authorization through circumstantial evidence," and "the scope of a doctor's prescribing authority" remains tethered to "objective criteria such as 'legitimate medical purpose' and 'usual course' of 'professional practice.'" *Id.* at 2382 (quoting 21 C.F.R. § 1306.04(a)).

Defendant acknowledges that *Ruan* dealt with the Controlled Substances Act, 21 U.S.C. § 841, and not the statutes at issue in this case, 18 U.S.C. §§ 1347 and 1349. Mot. ¶ 4. Yet he argues that the *Ruan* Court's "reasoning and analysis" proscribe what he claims was the government's theory of prosecution in this case—one that rested solely on an "objective" test with respect to medical necessity, as opposed to Defendant's subjective knowledge that the testing he ordered was not medically necessary:

> The categorical theory of prosecution on which the [g]overnment relied as to drug testing, both in the Indictment and in evidence and argument at trial—under which the [g]overnment contended that drug testing cannot be validly employed unless the physician personally reviews the test results and that the deterrence effect of full-array testing in keeping sober home residents off of the entire range of abused substances does not meet the medical necessity standard—can no longer be sustained in light of *Ruan*. Instead, the [g]overnment's burden was to prove that the Defendant did not subjectively believe that there would be a medically useful deterrent effect from testing and did not subjectively believe that his personal review of every report of laboratory testing submitted to the sober home was essential to achieve that deterrent purpose.

*Id.* But even if the *Ruan* Court's reasoning and analysis as to provisions of the Controlled Substances Act extend to this case—which is questionable—a cursory review of the record reveals that the government relied on no such "objective" theory at trial. Rather, the government readily established, through both direct and circumstantial evidence, that Defendant committed the charged offenses knowingly and willfully. *See* Resp. at 5–6 (collecting citations to evidence presented at trial regarding Defendant's *mens rea*).

At trial, the jury also heard expert testimony regarding the lack of any medical necessity underlying Defendant's extensive testing protocol. *See generally* Tr. of Jury Trial Vol. 5 [ECF No. 379]. This evidence is precisely the sort of objective evidence as to "legitimate medical purpose and usual course of professional practice" the *Ruan* Court tethered to a defendant's subjective intent. 142 S. Ct. at 2382 (internal quotation marks omitted).

Further, the Court instructed the jury as to the proper standard of scienter. Before it began its deliberations, the jury was repeatedly admonished that it could convict only if it found that Defendant had committed his crimes both knowingly and willfully. For example, the jury was instructed that it could find Defendant guilty of conspiracy to commit health care (or wire) fraud only if it found that "Defendant knew the unlawful purpose of the plan and willfully joined in it." Jury Instructions [ECF No. 395] at 15. The jury was further instructed that it could convict Defendant of substantive health care fraud only if Defendant acted willfully and with intent to defraud, with such intent further defined as having done "something with the specific intent to use false or fraudulent pretenses, representations, or promises to cause loss or injury." *Id.* at 17–18. The jury was given precise definitions as to the specific legal meaning of "knowingly" and "willfully." *Id.* at 26. Finally, the jury was instructed that good faith was a complete defense to the charges at hand:

> One who expresses an honestly held opinion, or an honestly formed belief, is not chargeable with fraudulent intent even though the opinion is erroneous or the belief is mistaken; and, similarly, evidence which establishes only that a person made a mistake in judgment or an error in management, or was careless, does not establish fraudulent intent.

*Id.* at 29.  At no time was the jury instructed as to any "objective" measure of scienter—*i.e.*, that it could convict Defendant based solely on some "reasonable doctor" standard.  Rather, the jury was instructed to consider only Defendant's subjective intent to defraud insurance providers by knowingly and willfully ordering unnecessary tests.

Defendant raises one additional argument.  Although silent as to the Eleventh Circuit's *Giancola* factor on which this argument supposedly hangs, Defendant nonetheless accuses the government of forgoing a money judgment on witness Kenneth Bailynson in exchange for his testimony against Defendant.  Mot. ¶ 12.  This conferral of a "multi-million-dollar hidden financial benefit" on Mr. Bailynson, Defendant asserts, provides "grounds" that "merit the granting of bond."  *Id.* ¶¶ 12, 13.

The government responds to Defendant's argument as follows:

> The [g]overnment did not secretly agree to forgo a forfeiture money judgment as to Bailynson.  Rather, a preliminary order of forfeiture was entered on December 17, 2021 [ECF No. 309] and included 42 real properties as well as certain seized currency.  The forfeiture of those assets remains ongoing.  After Bailynson's sentencing (which occurred after his testimony against the Defendant), the [government] exercised its discretion not to seek a forfeiture money judgment in addition to restitution and the other forfeited properties.  At no time, however, were any promises made to Bailynson.  Moreover, Bailynson's plea agreement contained *his* agreement to the entry of a forfeiture money judgment and not a commitment by the [g]overnment to seek one.  [ECF No. 309 at 12].

Based on these arguments, the Court finds no basis for Defendant's claim that the government's forfeiture activity has any bearing on Defendant's merits for bond pending appeal.

## CONCLUSION

Upon careful consideration, the Court concludes that Defendant fails to establish that his appeal raises "substantial" questions of law or fact that are "likely" to result in one of the enumerated remedies under 18 U.S.C. § 3143.[2]  Accordingly, it is hereby

**ORDERED AND ADJUDGED** that Defendant's Motion [ECF No. 561] is **DENIED**.

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 27th day of July, 2022.

_____

RODOLFO A. RUIZ II
UNITED STATES DISTRICT JUDGE

---

[2]  Given the absence of a substantial question—and the fact that the parties do not dispute the remaining *Giancola* factors, Reply at 10 n.3—the Court need not consider whether Defendant is likely to flee or pose a danger to the safety of another person or the community if released or whether the appeal is for the purpose of delay.